UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTOPHER WILLARD,

    Plaintiff,

    v.

Civil Action 2:19-cv-4959
Judge Algenon L. Marbley
Magistrate Judge Chelsey M. Vascura

OHIO DEPARTMENT OF
REHABILITATIONS & CORRECTIONS, *et al.*,

    Defendants.

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, Christopher Willard, an Ohio inmate who is proceeding without the assistance of counsel, brings this civil rights action under 42 U.S.C. § 1983 against the Ohio Department of Rehabilitations and Corrections ("ODRC"), Belmont Correctional Institution ("BCI"), and ODRC physician Dr. Eddy, alleging that Defendants' decisions regarding his medical treatment were negligent and in violation of the Eighth Amendment and an order from the Cuyahoga County Court of Common Pleas. This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Having performed the initial screen, for the reasons that follow, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's

federal claims pursuant to § 1915(e)(2) for failure to state a claim on which relief may be granted and **DISMISS** his state-law claims **WITHOUT PREJUDICE**.

This matter is also before the Court for consideration of Plaintiff's motions for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2), which are **GRANTED**. (ECF Nos. 2 and 4.) Plaintiff is required to pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's certified trust fund statements reveal that he cannot pay the filing fee because he currently possesses no money in his prison account.

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust accounts (Inmate Id Number A651822) at Belmont Correctional Institution is **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six-months immediately preceding the filing of the Complaint.

After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00 until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Checks should be made payable to: Clerk, United States District Court. The checks should be sent to:

> Prisoner Accounts Receivable
> 260 U.S. Courthouse
> 85 Marconi Boulevard
> Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

It is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid. The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

**I.**

According to the Complaint, in November 2014, Judge Stephen Gall of the Cuyohoga County Court of Common Pleas sentenced Plaintiff to a term of incarceration of eight years and ordered that ODRC dispense the medication Enbrel to Plaintiff. In March 2015, ODRC sent Plaintiff to a rheumatologist at The Ohio State University ("OSU"). The OSU physician diagnosed Plaintiff with rheumatoid arthritis and psoriasis and recommended that Plaintiff be prescribed Enbrel, Methotrexate, and Mobic. Thereafter, ODRC approved Plaintiff to receive Enbrel and continued to dispense Enbrel to him for more than four years, until October 25, 2019, when Defendant Dr. Eddy informed Plaintiff that ODRC discontinued his medication. Plaintiff alleges that ODRC Nurse Practitioner McNally and ODRC Healthcare Administrator Mr. Murphy met with him on October 31, 2019, and informed him that he would instead be prescribed Naproxen and Elavil. According to Plaintiff, his condition "is not curable" but only treatable, and ODRC's decision to prescribe him Naproxen and Elavil instead of Enbrel "is not [providing] **any** form of treatment." (Pl.'s Compl. 8, ECF No. 4-1 at PAGEID # 45 (emphasis in original).) Plaintiff alleges that the side effects for his preferred medication "really only include lymphoma and liver toxicity," and he speculates that if he does not receive Enbrel, he "will suffer" a number of symptoms, including joint deformities, joint stiffness, flexion contractures, ulnar deviation of the fingers, hammer toe deformity, morning stiffness, chronic pain, loss of

sleep, depression, and weakening of his joints and body. (*Id*. at PAGEID # 46.)

Plaintiff filed a Motion for Emergency Injunctive Relief on November 8, 2019, but neglected to attach a complaint, prompting the Court to put on a Notice of Deficiency (ECF No. 3) giving Plaintiff until November 26 to file a Complaint. Plaintiff timely filed a Complaint on November 26, 2019. (ECF No. 4-1.) Plaintiff includes several attachments to his Complaint, including his grievance history spanning from October 25, 2019, through November 14, 2019.

In these grievances, Plaintiff states that he was informed that the discontinuation of Enbrel was a "formulary issue" and also that he "presented none of the symptoms," to which Plaintiff replied that the lack of symptoms "demonstrates the effectiveness of the Enbrel that [he] was taking." (*Id*. at PAGEID # 64.) The Office of the Inspector of the Institutional Services responded to Plaintiff's grievance on November 7, 2019, stating that Plaintiff had previously been prescribed Enbrel "due to the signs and symptoms" he was experiencing and his historical recount of his diagnoses. (*Id*.) The grievance response further explains that Enbrel's status as a non-formulary medication triggers periodic review of the "current medical status of the patient," which may result in continued approval or development of an alternative plan of care. (*Id*.) The response goes on to state that Plaintiff's "lab values were drawn, [a] physical evaluation took place and up-to-date imaging was processed," which were reviewed together with "the potential adverse effects" of Enbrel, and, as a result, an "alternative plan of care has been developed." (*Id.*) Plaintiff's grievance was denied. Plaintiff appealed this denial, and the grievance log Plaintiff attaches identifies the status of the grievance as of November 14 as "pending." (*Id*. at PAGEID # 66.)

In addition to an Eighth Amendment medical indifference claim, Plaintiff asserts a state-law medical negligence claim and also appears to be asking that this Court hold Defendants in

contempt for violating an order issued by the Cuyahoga County Court of Common Pleas. In terms of relief, Plaintiff seeks monetary damages and a Court order requiring Defendants to treat him with Enbrel "until such time that the medication no longer performs and/or causes negative side effects." (*Id*. at PAGEID # 50.)

## II.

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> \*   \*   \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).

5

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. Apr. 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520

(1972).

### III.

The undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's Eighth Amendment claim pursuant to 28 U.S.C. § 1915(e)(2).

It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The subjective component regards prison officials' state of mind. *Id*. Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011); *see also Jones*, 625 F.3d at 941 ("[T]he prison official must have acted with a state of mind similar to recklessness. Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." (citations omitted)).

The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received

7

> inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

*Alspaugh*, 643 F.3d at 169. *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately . . . the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." (internal quotation marks and citation omitted)). Moreover, "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id*. at 591 (quotation marks and citation omitted).

Here, nothing in Plaintiff's Complaint or its attachments reveal that Defendants (or individuals who Plaintiff might seek to add as defendants) were aware of facts from which they could infer that Plaintiff faced a substantial risk of serious harm and that they consciously disregarded that risk. Plaintiff's allegation that he is not being provided "**any** form of treatment," (Pl.'s Compl. 8, ECF No. 4-1 at PAGEID # 45), is belied by his other allegations, in which he concedes that ODRC medical staff met with him following discontinuation of Enbrel and informed him that he would be prescribed Naproxen and Elavil. And neither Plaintiff's speculation that he "will suffer" a laundry list of symptoms due to the discontinuation of his preferred medication nor his assertion that the benefits of Enbrel outweigh its potential side effects (lymphoma and liver toxicity) persuade the undersigned to conclude that Defendants (or individuals who Plaintiff might seek to add as defendants) acted with the requisite level of

8

culpability in determining that his Enbrel should be discontinued and Naproxen and Elavil prescribed.

It is clear that Plaintiff disagrees with the decision of the individuals making decisions about what treatment he receives for his conditions. And it may be true that Plaintiff has the better argument about what his *best* course of treatment is. But "[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim." *Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003). *See also Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002) ("[A] difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim."). Indeed, courts considering similar constitutional challenges to a prison official's discontinuation of or refusal to prescribe Enbrel have dismissed those claims. *See, e.g.*, *Neeley v. Carrillo*, No. 14-0542, 2014 WL 271160, at *4-6 (E.D. Penn June 16, 2014) (dismissing inmate's medical indifference claim premised upon discontinuation of Enbrel for treatment rheumatoid arthritis where inmate was prescribed pain medication to treat condition, explaining that a "mere disagreement as to the proper medical treatment of his condition is insufficient to establish an Eighth Amendment violation"); *McClary v. Huston*, No. 11-1394, 2013 WL 4448576, at *5 (C.D. Ill. Aug. 16, 2013) (holding that physician's decision to discontinue Enbrel and prescribe Naprosyn to treat inmate's rheumatoid arthritis did not amount to medical indifference, reasoning "[i]t is not the courts' practice to pass judgment upon whether the treatment decision made was the correct one"); *Krantz v. Boeckman*, No. 11-4169, 2012 WL 369444, at *2 (D. S.D. Feb. 3, 2012) (dismissing inmate's claim premised upon his allegations that defendants' refusal to prescribe him Enbrel for his psoriasis

9

was cruel and unusual punishment, explaining that his allegations merely reflected a "disagreement with the course of prescribed treatment").

The undersigned also notes that to the extent Plaintiff is alleging that his preferred medication was discontinued because ODRC did not want to incur the costs associated with Enbrel, such an allegation, without more, does not state a medical indifference claim. *Winslow v. Prison Health Serv.*, 406 F. App'x 671, 674 (3d Cir. 2011) ("[T]he naked assertion that Defendants considered cost in treating [the inmate's condition] does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment."); *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997) ("[T]he deliberate indifference standard of [*Estelle v. Gamble*, 429 U.S. 97 (1976)] does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."); *Hendricks v. Kasich*, No. 2:12-CV-729, 2014 WL 2006800, at *11-12 (S.D. Ohio May 16, 2014) (collecting cases). "Moreover, protocols and policies taking cost into account and providing economic incentives to keep costs under control 'simply lack[ ] the requisite subjective component' of an Eighth Amendment deliberate indifference claim, especially when a prisoner receives medical treatment, even if it is not the treatment he prefers." *Mason v. Eddy*, No. 1:18-cv-2968, 2019 WL 3766804, at *9 (N.D. Ohio Aug. 9, 2019) (quoting *Glatts v. Lockett*, No. 09-29, 2011 WL 772917, at *6-7 (W.D. Pa. Feb. 28, 2011)).

To the extent Plaintiff is requesting that this Court hold ODRC in contempt for failing to comply with an order issued by the Cuyahoga County Court of Common Pleas or enforce such an order through an injunction, it is **RECOMMENDED** that the Court **DISMISS** any such claim because this Court lacks jurisdiction to do so. *See Bedel v. Thompson*, 956 F.2d 1164,

1992 WL 44883, at *4 (6th Cir. Mar. 4, 1992) (table opinion) ("Enforcement of [an order] through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order." (citing *Leman v. Krentler–Arnold Hinge Last Co.*, 284 U.S. 448, 452 (1932)); *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Enforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order.") (citations omitted).

Finally, because it is recommended that Plaintiff's federal-law claims be dismissed, it is further **RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law negligence and medical malpractice claims and **DISMISS** those claims **WITHOUT PREJUDICE**. *See* 28 U.S.C. § 1367(c)(3).

## IV.

Plaintiff's motions seeking leave to proceed *in forma pauperis* are **GRANTED**. (ECF Nos. 2 and 4.) In addition, for the reasons set forth above, it is **RECOMMENDED** that Plaintiff's federal claims be **DISMISSED** for failure to state a claim pursuant to pursuant to § 1915(e)(2) and that the Court decline to exercise supplemental jurisdiction over his state-law claims and **DISMISS** those claims **WITHOUT PREJUDICE**.

The Clerk is **DIRECTED** to send a copy of this order to the Ohio Attorney General's Office, 150 E. Gay St., 16th Floor, Columbus, Ohio 43215.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura* _____
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE